**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Phone:       (312) 222-9350
Facsimile:   (312) 527-0484

**JENNER & BLOCK LLP**
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071
Phone:       (213) 239-5100
Facsimile:   (213) 239-5199

Attorneys for Defendant
Kashi Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA NACARINO and MEGAN TAYLOR, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>KASHI COMPANY,<br><br>           Defendant. | Case No. 3:21-cv-7036-VC<br><br>The Honorable Vince Chhabria<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:   December 16, 2021<br><br>Hearing Time:   10:00 a.m.<br><br>Courtroom:        Remote (Zoom) |

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

ARGUMENT .........................................................................................................................................2

    I.    Kashi's Front-Label Protein Claims Are Not "False or Misleading." ...............................2

    II.    The Regulations Permit Kashi to State the "Actual Amount of Protein" on the Front Label. ..................................................................................................................6

    III.    The FDA Has Rejected Plaintiffs' Interpretation of the FDA Regulations. ......................8

CONCLUSION ....................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ................................................................................................... 3

*Bassiri v. Xerox Corp.*,
   463 F.3d 927 (9th Cir. 2006) ................................................................................................... 9

*Camreta v. Greene*,
   563 U.S. 692 (2011) ................................................................................................................ 6

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................................................... 7

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012) .............................................................................................................. 10

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ............................................................................................... 10

*Coe v. Gen. Mills, Inc.*,
   No. 15-5112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) .................................................. 3

*Durnford v. MusclePharm Corp.*,
   907 F.3d 595 (9th Cir. 2018) ............................................................................................. 2, 3

*Gubala v. CVS Pharmacy, Inc.*,
   No. 14-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) .................................................... 5

*Hawkins v. Kroger Co.*
   906 F.3d 763 (9th Cir. 2018) ............................................................................................. 7, 8

*John Paul Mitchell Systems v. Quality King Distributors, Inc.*,
   106 F. Supp. 2d 462 (S.D.N.Y. 2000) ..................................................................................... 4

*Johnson v. Wayside Properties, Inc.*,
   41 F. Supp. 3d 973 (E.D. Cal. 2014) ....................................................................................... 5

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ...................................................................................................... 9, 10

*Minor v. Baker Mills, Inc.*,
   No. 20-2901, 2020 WL 11564643 (N.D. Cal. Nov. 12, 2020) ................................................ 5

*Porter v. NBTY*,
   No. 15-11549, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) .................................................. 5

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ..................................................................................................7, 8

*Tablada v. Thomas*,
    533 F.3d 800 (9th Cir. 2008) ........................................................................................................9

*Torrance Redevelopment Agency v. Solvent Coating Co.*,
    763 F. Supp. 1060 (C.D. Cal. 1991) ............................................................................................9

*Ulrich v. Probalance, Inc.*,
    No. 16-10488, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ......................................................5

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ...................................................................................................................10

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) .......................................................................................9

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................................................................5

**Statutes and Regulations**

21 C.F.R. § 10.85 ...............................................................................................................................9

21 C.F.R. § 101.9 ......................................................................................................................*passim*

21 C.F.R. § 101.13 ....................................................................................................................*passim*

21 U.S.C. § 343-1(a)(5) ....................................................................................................................7

**Rules**

Fed. R. Evid. 901(a) ..........................................................................................................................4

**Other Authorities**

58 Fed. Reg. 2079 (Jan. 6, 1993) ..................................................................................................3, 5

62 Fed. Reg. 67775-01 (Dec. 30, 1997) ...........................................................................................6

**INTRODUCTION**

In their opposition brief, Plaintiffs do not dispute that the front label of Kashi GO cereal accurately states the "actual amount of protein" calculated using the FDA-approved nitrogen method. 21 C.F.R. § 101.9(c)(7)(ii). Nor do Plaintiffs dispute that the FDA regulations expressly permit Kashi to make accurate claims about the amount of protein in its products (like "11g Protein") so long as they do not characterize the amount of protein present in the food. *See* 21 C.F.R. § 101.13(i)(3). Instead, Plaintiffs double down on their argument that it is misleading to place an accurate statement of protein *quantity* on the front of the package—which is identical to the quantity stated in the Nutrition Facts panel—because it does not account for protein *quality*. But the FDA does not require manufacturers to correct front-label protein claims to account for protein quality, and it has repeatedly confirmed that it disagrees with Plaintiffs' reading of the regulations. All the FDA requires of Kashi is that it state the "corrected amount of protein" as a "Percent of Daily Value" in the Nutrition Facts panel. 21 C.F.R. § 101.9(c)(7)(i). Plaintiffs do not dispute that Kashi does so, and they cannot invoke state law to require Kashi to correct its front-label protein claims to account for protein quality—a requirement that is inconsistent with the FDA regulations.

Unable to establish that Kashi's labeling violates the specific protein labeling requirements set forth by 21 C.F.R. § 101.9(c)(7), Plaintiffs assert that Kashi's front-label protein claims are not authorized by federal law because they are "false and misleading." But as the Ninth Circuit has made clear, Plaintiffs cannot rely on the general rule against "misleading" labeling when a more specific regulation permits the challenged labeling. Here, the FDA regulations specifically require front-label protein claims to be based on the same "analytical methodology" (*i.e.*, the nitrogen method) used to calculate protein content in the Nutrition Facts panel. *See* 21 C.F.R. § 101.13(o). Moreover, the FDA has determined that the way manufacturers must account for protein quality is to state the "corrected amount of protein" as a percent of daily value in the Nutrition Facts panel—not to adjust the *number of grams* of protein. 21 C.F.R. § 101.9(c)(7)(i). The rule against "false and misleading" labeling is not a magic wand Plaintiffs can wave to sidestep these regulations and hold Kashi liable for protein claims the FDA has specifically authorized.

Plaintiffs are similarly misguided in arguing that the FDA's authorization to state the "actual amount of protein" in the Nutrition Facts panel does not entitle Kashi to make the same statement on the front of the label. The FDA regulations specifically contemplate that manufacturers may make "protein

claims" on the front labeling of their products—which is what triggers the obligation to state the "corrected amount of protein" as a Percent of Daily Value in the Nutrition Facts panel. 21 C.F.R. § 101.9(c)(7)(i). Moreover, the FDA expressly authorizes manufacturers to make accurate claims about the quantity of nutrients, including protein, in their products. *See* 21 C.F.R. § 101.13(i)(3). And even if Plaintiffs were correct that Kashi *could* correct for protein digestibility when making front-label protein claims or simply avoid making front-label protein claims altogether, that is irrelevant. The FDA does not *require* Kashi to correct for protein digestibility when stating the number of grams of protein on the front label, and federal law preempts Plaintiffs' effort to use California law to impose such a labeling requirement on Kashi.

As specious as Plaintiffs' reading of the regulations is in isolation, it is even more problematic in light of the FDA's consistent, explicit position that its regulations do not require manufacturers to account for protein quality when making front-label quantitative protein claims. Although Plaintiffs claim that the emails Kashi cites do not reflect the FDA's official position, they do not (and cannot) identify any evidence that the FDA has taken a contrary position. Moreover, it is irrelevant whether the FDA's emails carry the force of law; even if they do not, they are nonetheless entitled to significant (if not controlling) deference. Given the FDA's repeated insistence that its regulations do not require manufacturers to account for protein quality when making front-label protein claims, Plaintiffs cannot seek to impose that duty on Kashi.

In short, the FDA regulations do not require Kashi to account for protein *quality* when making front-label claims about protein *quantity*, and the FDA has rejected Plaintiffs' reading of its regulations. Plaintiffs' lawsuit is preempted, and this Court should dismiss their claims against Kashi with prejudice.

## ARGUMENT

### I. Kashi's Front-Label Protein Claims Are Not "False or Misleading."

Plaintiffs do not dispute that the FDA regulations "allow nitrogen to be used on the nutrition panel as a proxy for protein content." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 (9th Cir. 2018); *see also* 21 C.F.R. § 101.9(c)(7) ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food . . . ."). Nor do Plaintiffs dispute that the FDA generally permits manufacturers to make accurate claims about the quantity of nutrients (such as protein) in their products, so long as those claims do not "in any way implicitly characterize the level of the nutrient in the food." 21 C.F.R. § 101.13(i)(3). And they do not dispute that the FDA regulations specifically contemplate that manufacturers

may make "protein claim[s]" on the labeling of their products, so long as they state the "corrected amount of protein" in the Nutrition Facts panel as a "Percent of Daily Value." 21 C.F.R. § 101.9(c)(7)(i). Those regulations collectively permit Kashi to calculate the protein content of its products using the FDA-approved nitrogen method (which the FDA calls the "actual amount of protein," 21 C.F.R. § 101.9(c)(7)(ii)) and to state the "actual amount of protein" on the front label of its products.

Plaintiffs' principal response is that Kashi's front-label protein claims are nonetheless "false or misleading" because they fail to account for the allegedly low quality of the protein in the products.[1] But the Ninth Circuit has made clear that when a "regulatory framework creates specific requirements," those requirements "may not be trumped" by "general prohibitions"—such as the FDA's general rule against false or misleading labeling. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 934 (9th Cir. 2011); *see also Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *4 (N.D. Cal. Aug, 10, 2016) ("[A] statement cannot be 'false or misleading' . . . where challenged conduct is expressly required or permitted by FDA regulations.") (citations and internal quotation marks omitted). The Ninth Circuit specifically applied this principle in *Durnford* to reject a similar claim alleging that the number of grams of protein stated on the product's label was "not an accurate measure of true protein content," and it emphasized that the FDA's rule against "false or misleading statements *in general* does not alter our analysis." 907 F.3d at 601–02. Here too, because the FDA permits the use of nitrogen as a proxy for protein content and does not require manufacturers to account for protein quality when stating the number of grams of protein, Plaintiffs cannot use the general rule against "false and misleading" labeling claims to impose such a duty on Kashi.

Plaintiffs attempt to sidestep this result by pointing to the FDA's statements that "[i]nformation on protein quantity alone can be misleading on foods that are of low protein quality" and that consumers may be "misled by information on only the amount of protein present." Opp'n at 7 (quoting 58 Fed. Reg. 2079, 2101-02 (Jan. 6, 1993)). But Plaintiffs fail to acknowledge the FDA's conclusion—in the same Final Rule—that "the percent of the reference value for protein" is "satisfactory . . . to allow consumers to readily

---

[1] Plaintiffs also argue that Kashi's front-label protein claims are "literally false" based on the purported results of "amino acid content testing" they conducted. Opp'n at 15; *see also* Compl. ¶¶ 3, 17. But as Kashi explained in its motion to dismiss, the FDA does not require manufacturers to use "amino acid content testing" to measure protein content, and Plaintiffs do not (and cannot) dispute that Kashi measures the protein content of its products using the FDA-approved nitrogen method. *See* MTD at 7–8.

identify foods of low protein quality." 58 Fed. Reg. at 2102. In other words, the FDA made a policy choice that the best way to address concerns about low protein quality was to require manufacturers to provide the "corrected amount of protein" in the form of a "percent of daily value"—not to require them to correct the *number of grams* of protein. 21 C.F.R. § 101.9(c)(7)(i). There is no dispute that Kashi's labeling states the corrected amount of protein as a percent of daily value. *See* RJN Ex. 1.[2] It is therefore implausible that the FDA would regard Kashi's labeling—which states both the "actual amount of protein" in grams and the "corrected amount of protein" as a percent of daily value—as misleading.

Relying on the same out-of-context statements from the FDA's Final Rule, Plaintiffs argue that the FDA intended that "protein *quantities* . . . would, at minimum, *always* be accompanied by information about protein *quality*." Opp'n at 8. This argument is untethered from the text and structure of 21 C.F.R. § 101.9(c)(7)(i). Under that regulation, if a product makes a claim about protein content *outside* the Nutrition Facts panel, the manufacturer must state the "corrected amount of protein" *inside* the Nutrition Facts panel. But the regulation does not state, or even suggest, that a front-label claim about protein *quantity* must be accompanied in the same location by information about protein *quality*.[3] Moreover, to the extent that *was* the FDA's intention, the regulation accomplishes that goal by requiring Kashi to state both the "actual amount of protein" (in grams) and the "corrected amount of protein" (as a percent of daily

---

[2] Plaintiffs assert that the Court cannot take judicial notice of Kashi's current labeling, which states "13g Protein," because this amount differs from the "11g Protein" claim that allegedly appears on the product Plaintiffs purchased. *See* Opp'n at 4 n.1. But the label was authenticated by the attorney who purchased it, which is more than sufficient to "support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (noting that Rule 901(a) "is flexible . . . about what serves to authenticate a document" and that "[d]irect testimony by a knowledgeable witness certainly satisfies the rule."). And even if the "11g Protein" claim differs from the "13g Protein" claim, that difference is entirely consistent with Plaintiffs' allegation that the "same or *substantially similar* product label has appeared on each Product during the entirety of the Class Period" in the same "*general form*." Compl. ¶ 16 (emphasis added).

[3] Plaintiffs also assert that the term "protein claim" is "broad" and encompasses claims other than express nutrient content claims permitted by 21 C.F.R. § 101.13(i)(3). *See* Opp'n at 8. But the alternative "protein claims" Plaintiffs cite—including "good source of protein" and "protein-packed"—are implied nutrient content claims that are also governed by 21 C.F.R. § 101.13. *See generally* 21 C.F.R. § 101.13(b)(2)(i) (noting that an "implied nutrient content claim" includes any claim that "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount."). Plaintiffs offer no basis for their speculation that the term "protein claim" refers only to implied nutrient content claims, as opposed to the express nutrient content claims that appear on Kashi's packaging.

value) in the Nutrition Facts panel. It does not require Kashi to take the *additional* step of correcting the number of grams of protein using the PDCAAS—either on the front label or in the Nutrition Facts panel. Even if Plaintiffs disagree with the FDA's policy choice, that does not make Kashi's labeling misleading.

Relying on *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), Plaintiffs then argue that Kashi cannot use the "corrected amount of protein" in the Nutrition Facts panel to correct its allegedly "misleading" protein claims on the front of the package. *See* Opp'n at 8-9. But *Williams* did not address whether the defendant's labeling was authorized by the FDA regulations, and it expressly acknowledged that "[c]ompliance with FDA regulations may be relevant to a preemption argument." 552 F.3d at 940 n.4. Here, the only reason Kashi's front-label protein claims are allegedly "misleading" is that they do not account for protein quality. But the FDA has made clear that stating the corrected amount of protein in the Nutrition Facts panel is "satisfactory" to eliminate any purported deception resulting from statements about protein quantity. 58 Fed. Reg. at 2102. Thus, despite Plaintiffs' suggestion to the contrary, the sufficiency of the FDA-required "percent of daily value" statement does not present a "fact question not amenable to resolution on [a] motion to dismiss." Opp'n at 9 n.3. The FDA has *already* determined that it is sufficient, and neither this Court nor a jury is entitled to second-guess that determination.

Finally, Plaintiff cites several cases in which other district courts denied motions to dismiss purportedly similar protein labeling lawsuits. *See* Opp'n at 1, 4-5. But none of these cases involved purely quantitative claims like "11g Protein"; instead, the labeling in each case included qualitative statements about the protein in the product, failed to state the "corrected amount of protein" as a "percent of daily value," or both.[4] Moreover, none of these courts had the benefit of the FDA's judgment that its regulations do not require manufacturers to correct front-label protein claims. *See infra* § III; *see also, e.g.*, *Johnson v. Wayside Props., Inc.*, 41 F. Supp. 3d 973, 980 n.5 (E.D. Cal. 2014) (deferring to agency interpretation

---

[4] *See, e.g.*, *Minor v. Baker Mills, Inc.*, No. 20-2901, 2020 WL 11564643, at *1 (N.D. Cal. Nov. 12, 2020) (labeling did not include percent of daily value); *Ulrich v. Probalance, Inc.*, No. 16-10488, 2017 WL 3581183, at *1 (N.D. Ill. Aug. 18, 2017) (similar); *Porter v. NBTY*, No. 15-11549, 2016 WL 6948379, at *2 (N.D. Ill. Nov. 28, 2016) (labeling stated "60g Premium Protein"); *Gubala v. CVS Pharm., Inc.*, No. 14-9039, 2016 WL 1019794, at *1 (N.D. Ill. Mar. 15, 2016) (labeling stated "Whey Protein Powder" and "26 grams of high-quality protein" but did not include percent of daily value). Notably, Judge Seeborg later acknowledged that his decision in *Minor v. Baker Mills* may have "rest[ed] on a mistaken understanding" of the applicable FDA regulations. *See* RJN Ex. 7, at 3 (order in *Chong v. KIND LLC*).

of its own regulation in lieu of previous district court decisions that had rejected this interpretation). And to the extent these courts held that purely quantitative front-label protein claims may be misleading because they do not account for protein quality, those decisions are mistaken, inconsistent with the applicable FDA regulations, and are "not binding precedent." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

II.     **The Regulations Permit Kashi to State the "Actual Amount of Protein" on the Front Label.**

In addition to arguing that Kashi's front-label protein claims are misleading, Plaintiffs also assert that 21 C.F.R. § 101.9(c)(7) governs only the information that Kashi can state in the Nutrition Facts panel—not the information it is entitled to state on the front of the package. *See* Opp'n at 5–6. But the FDA regulations specifically permit manufacturers to make accurate claims about the quantity of protein (and other nutrients) in their products, so long as they do not characterize the amount of protein in the product. *See* 21 C.F.R. § 101.13(i)(3). Critically, the FDA has also made clear that any such claims must be based on the same "analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9." 21 C.F.R. § 101.13(o). And the FDA has emphasized its "belief in the importance of consistency between nutrient content claims and information in the nutrition label to prevent consumer confusion." 62 Fed. Reg. 67775-01, 67778 (Dec. 30, 1997). Because the FDA regulations entitle Kashi to calculate protein content in the Nutrition Facts panel using the nitrogen method, they also entitle Kashi to make front-label protein claims calculated using the nitrogen method. Plaintiffs' arguments to the contrary all fail.

Plaintiffs argue that 21 C.F.R. § 101.13(o) "does not *authorize* any claims" and instead "relates to *compliance*." Opp'n at 9. But that is beside the point, as 21 C.F.R. § 101.13(i)(3) indisputably authorizes Kashi to make quantitative claims about the amount of protein in its products. 21 C.F.R. § 101.13(o) in turn provides that any such claim must be based on the same "analytical methodology"—*i.e.*, the nitrogen method—used in the Nutrition Facts panel. And while Plaintiffs argue that 21 C.F.R. § 101.13(i)(3) does not authorize Kashi's protein claims because they are allegedly "misleading" (Opp'n at 9), this argument fails because the FDA regulations do not require Kashi to account for protein quality when making front-label protein claims, so long as it states the "corrected amount of protein" in the Nutrition Facts panel.[5]

---

[5] For similar reasons, it is irrelevant whether Kashi's front-label protein claims are subject to 21 C.F.R. § 101.13(c). Even if those claims are "subject to the requirements for nutrient content claims," Plaintiffs identify no reason—other than their meritless contention that Kashi's claims are "misleading"—that Kashi's front-label claims do not comply with the requirements imposed by 21 C.F.R. § 101.13.

Plaintiffs then argue that the phrase "analytical methodology" in 21 C.F.R. § 101.13(o) refers only to the "sample size" and "recordkeeping" requirements imposed by 21 C.F.R § 101.9(g), rather than the nitrogen method used to measure protein content. Opp'n at 9. But the regulation makes clear that the term "analytical methodology" refers to a methodology used to calculate nutrient content. *See, e.g.*, 21 C.F.R. §§ 101.9(g)(2), 101.9(g)(4)(ii), 101.9(g)(5); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 n.6 (N.D. Cal. 2010) (noting that "[t]he 'analytical methodology' phrase refers to the [FDA]'s preferred mechanism for measuring actual nutrient levels in food products"). And while Plaintiffs attempt to manufacture an inconsistency between the singular term "analytical methodology" and the "multiple testing methodologies (plural) described in section 101.9" (Opp'n at 9), there is no such inconsistency: if a manufacturer uses a specific methodology (such as the nitrogen method) to measure a nutrient in the Nutrition Facts panel, it must also use that methodology when making front-of-pack claims. Any other reading would result in conflicting measurements on the front of the package and the Nutrition Facts panel, which would contravene the FDA's express directive that these two parts of the label should be consistent.

Plaintiffs then argue that, because 21 C.F.R. § 101.9(c)(7) does not *mandate* the use of the nitrogen method when calculating protein content in the Nutrition Facts panel and permits the use of the PDCAAS, Kashi could eliminate any inconsistency by using the PDCAAS to calculate the number of grams of protein on both the front label and in the Nutrition Facts panel. *See* Opp'n at 10. But even assuming arguendo that the FDA regulations do not require the use of the nitrogen method (which they do), they indisputably *permit* the use of the nitrogen method to calculate protein. It is accordingly irrelevant whether Kashi could adopt an alternative labeling practice that is consistent with the FDA regulations or whether its front-label claims are "voluntary." Because the FDA regulations permit Kashi to calculate protein content using the nitrogen method, any attempt to invoke state law to hold Kashi liable for doing so would necessarily impose labeling requirements that are not "identical to" those imposed by federal law. 21 U.S.C. § 343-1(a)(5).

Finally, relying primarily on *Hawkins v. Kroger Co.* 906 F.3d 763 (9th Cir. 2018) and *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), Plaintiffs argue that the FDA's authorization to state the "actual amount of protein" in the Nutrition Facts panel does not entitle Kashi to make the same claim on the front label of its products. *See* Opp'n at 5–6. This argument is a strawman. Kashi's position is not that it is entitled to state the "actual amount of protein" on the front of the package simply because 21

7

C.F.R. § 101.9(c)(7) requires Kashi to state this information in the Nutrition Facts panel. Instead, it is that its front-label protein claims accurately reflect the amount of protein calculated using the nitrogen method and that the FDA regulations do not require its front-label claims about protein *quantity* to account for protein *quality*. And in contrast to *Hawkins* and *Reid*, where the front-label claims "Zero Trans Fat" or "0g Trans Fat" were indisputably false because the challenged products actually contained trans fat, Plaintiffs do not dispute that Kashi's front labels accurately state the number of grams of protein calculated using the FDA-approved nitrogen method. *Hawkins* and *Reid* simply have no application to this case.

### III.  The FDA Has Rejected Plaintiffs' Interpretation of the FDA Regulations.

If there were any doubt that the FDA regulations do not require Kashi to account for protein quality when making front-label protein claims, the FDA has eliminated it. In response to an inquiry by one of Kashi's attorneys, the FDA confirmed that "[o]ur regulations do not require that the gram amount declared in a quantitative statement made outside the Nutrition Facts panel be corrected for protein digestibility." RJN Ex. 4. The FDA similarly confirmed to an attorney for KIND LLC that "[q]uantitative information about a nutrient, such as protein, that is displayed on the front of the package is considered a nutrient content claim in accordance with 21 CFR § 101.13(i)(3), and must be consistent with the declaration of the quantitative amount of protein declared in the Nutrition Facts label." RJN Ex. 5.

In short, every time the FDA was asked, it took the position that manufacturers need not correct front-label quantitative claims to account for protein quality and that the amount of protein stated on the front label should match the amount of protein in the Nutrition Facts panel. Manufacturers like Kashi rely on the FDA's guidance about how to comply with its labeling regulations, and this Court should not place Kashi in a position where it cannot trust the FDA's assurances that its labeling complies with the regulations. Plaintiffs' efforts to sidestep the FDA's interpretation of its own regulations uniformly fail.

Plaintiffs first argue that the two FDA emails rejecting their position are not subject to judicial notice because they "are not a matter of public record" and "do not come from sources whose accuracy cannot be reasonably questioned." Opp'n at 12 n.5. But Plaintiffs do not—and cannot—dispute that these emails were obtained through the official channels that the FDA established to obtain information from the Center for Food Science and Applied Nutrition ("CFSAN"), to which the FDA has invited industry and other interested parties to submit inquiries about the FDA regulations. *See* RJN Ex. 2–3. Despite Plaintiffs'

characterization of the emails as "off-the-cuff statements from unknown agency employees" (Opp'n at 14), both emails were signed by CFSAN—not by individual employees expressing their own views. *See* RJN Ex. 4–5. And under similar circumstances, many courts in the Ninth Circuit have taken judicial notice of correspondence from the FDA and other administrative agencies.[6] This Court should do the same here.[7]

Plaintiffs then argue that CFSAN's emails are not entitled to *Auer* deference, both because the emails do not reflect the agency's "official position" and because the regulations at issue are not "genuinely ambiguous." *See* Opp'n at 12–13 (discussing *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)). But *Kisor* makes clear that a statement represents the "official position" of the agency so long as it "emanate[s] from those actors, using those vehicles, understood to make authoritative policy in the relevant context." *Kisor*, 139 S. Ct. at 2416. Here, Kashi and KIND obtained these emails by submitting inquiries to CFSAN—the very body the FDA specifically designated to field these inquiries and provide guidance to industry. Even if these emails were not the product of notice-and-comment rulemaking and were not published in the Federal Register, that does not mean that they do not reflect the FDA's official position. Similarly, Kashi agrees that the regulations are not "genuinely ambiguous," as their text, structure, and purpose make clear that the FDA did not intend to require manufacturers to account for protein quality and digestibility when making front-label protein claims. But if the Court *were* to conclude that the regulation was susceptible of multiple reasonable interpretations (*i.e.*, genuinely ambiguous) even after applying all of the "traditional tools of construction," it must defer to the FDA's interpretation of its own regulations—under which Kashi need not account for protein quality when making front-label quantitative claims. *Kisor*, 139 S.Ct. at 2415.

Moreover, even if the FDA's interpretation of 21 C.F.R. § 101.9(c)(7) were not entitled to deference

---

[6] *See Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1073 (E.D. Cal. 2010) (taking judicial notice of opinion letter issued by CFSAN, as well as various FDA warning letters, in ruling on motion to dismiss); *Torrance Redevelopment Agency v. Solvent Coating Co.*, 763 F. Supp. 1060, 1066 (C.D. Cal. 1991) (taking judicial notice of correspondence from a state agency in ruling on motion to dismiss).

[7] Relying on 21 C.F.R. § 10.85(k), Plaintiffs also argue that the two emails from the FDA "are not official advisory opinions" and "cannot carry the force of law." Opp'n at 14. But that is irrelevant, as an agency's interpretation of its own regulations need not carry the force of law to be entitled to either *Auer* deference or *Skidmore* deference. *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (noting that *Auer* deference applies "where an agency interprets its own regulation, *even if through an informal process*") (emphasis added); *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008) ("If . . . the agency rule or decision . . . does not purport to have the force of law, it is entitled to a measure of deference proportional to its power to persuade, in accordance with the principles set forth in *Skidmore* . . . .").

under *Auer* and *Kisor*, it would nonetheless be entitled to "a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (citations and internal quotation marks omitted). Plaintiffs cite Justice Kavanaugh's comment that *Skidmore* deference is essentially "no deference" at all. Opp'n at 14 (citation and internal quotation marks omitted). But they ignore that courts afford more weight to the FDA's interpretation of its own regulations when "the regulatory scheme is highly detailed" and the agency "can bring the benefit of specialized experience to bear on" the issues implicated by the regulation. *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001). Plaintiffs do not dispute that this case hinges on the application of highly technical FDA regulations; that the FDA has specialized expertise in issues of food labeling; that there is a strong interest in uniform, nationwide food labeling standards; and that the FDA has consistently maintained that its regulations do not require manufacturers to account for protein quality or digestibility when making front-label quantitative claims. *See* MTD at 13–15. All of these factors give the FDA's interpretation the "power to persuade" and weigh strongly in favor of *Skidmore* deference.

If this Court is not willing to defer to the FDA's view that its regulations do not require Kashi to correct its purely quantitative protein claims to account for protein quality or digestibility, it should stay this case in deference to the FDA's primary jurisdiction and afford the FDA an opportunity to provide more authoritative guidance. *See generally Clark v. Time Warner Cable*, 523 F.3d 1110, 1114–15 (9th Cir. 2008) (noting that a court may defer to an agency when it "determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch"). Despite Plaintiffs' suggestion to the contrary (*see* Opp'n at 15), Kashi's motion to dismiss makes clear that at least two factors—the technical, specialized nature of the applicable FDA regulations and the need for consistency in food labeling—warrant the application of this doctrine. *See* MTD at 15. If the Court is not inclined to dismiss this case, it can—and should—stay it until the FDA provides more formal guidance as to whether Kashi must correct its front-label protein claims to account for protein quality and digestibility.

## CONCLUSION

Because Plaintiffs' claims against Kashi are preempted, this Court should dismiss their complaint.

DATED: December 2, 2021

JENNER & BLOCK LLP

By: /s/ Dean N. Panos
Dean N. Panos

Attorneys for Defendant
Kashi Company