**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

MATTHEW T. MCCRARY (admitted *pro hac vice*)
KALI R. BACKER (admitted *pro hac vice*)
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
kali@gutridesafier.com
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**JENNER & BLOCK LLP**
DEAN N. PANOS (admitted *pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone:  (312) 222-9350
Facsimile:   (312) 527-0484

ALEXANDER M. SMITH (Bar No. 295187)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA NACARINO and MEGAN TAYLOR, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>              Plaintiffs,<br><br>     v.<br><br>KASHI COMPANY,<br><br>              Defendant. | Case No.:  3:21-CV-07036-VC<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

The parties, Elena Nacarino and Megan Taylor ("Plaintiffs") and Kashi Company ("Kashi" or "Defendant"), submit this Joint Case Management Statement pursuant to this Court's Order entered September 16, 2021, (Dkt. #13), Rules 16 and 26(f) of the Federal Rules of Civil Procedure, Local Rule 16-9(a), and the Standing Order for All Judges of the Northern District of California.

**1.     Jurisdiction and Service:**

On September 10, 2021, Plaintiffs commenced this putative class action by filing a Class Action Complaint in this Court. Kashi was served on September 13, 2021. Plaintiffs allege that this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,0000, exclusive of interests and costs.

**2.     Facts:**

Plaintiffs' Statement:

Defendant prominently labels the primary display panel of its food products as providing specific amounts of protein per serving depending on the product (the "Products"[1]), such as "11g PROTEIN" on the label of the Kashi Go Cinnamon Crisp Cereal. Consumers, in turn, reasonably expect that each product will provide the actual amount of protein per serving that the front of the product package promises. In truth, however, the Products do not contain or provide the amount of protein that the labels claim. In particular, the Products' protein claims are misleading because Defendant uses low quality, incomplete protein sources that are of little use to the human body. Further, Defendant's front label claims do not provide any information as to the quality of the protein, such as by including a percent of daily value. As a result, Defendant's labels are false, misleading and misbranded under state and federal law.

FDA requires all food products to have a Nutrition Facts Panel ("NFP"). 21 C.F.R. § 101.9(c)(7). Typically, a manufacturer need only state protein quantity inside the NFP, and it may do so based on nitrogen testing, a method that estimates protein content by using nitrogen as a proxy. 21 C.F.R. § 101.9(c)(7) and (i). FDA regulations create different rules, however, for nutrient content claims that promote    protein    content    elsewhere    on    the    packaging,    as    Defendant    does    on    the

_____

[1] A non-exhaustive list of the Products is provided in Exhibit B to the Complaint.

Products. This dichotomy results from § 101.13(c) which specifically provides that statements in the NFP are **not** considered nutrient content claims and are not subject to the requirements of § 101.13, but **if that same information** is declared "elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." *Id*. § 101.13 (c). As a result, information taken from the NFP is subjected to heightened scrutiny when it is placed on the front of a package to advertise a product. One of those extra measures of scrutiny is § 101.13(i)(3), which specifically prohibits a manufacturer from stating any "**amount** or percentage of a nutrient" if that amount is "false or misleading **in any respect**." *Id*. § 101.13(i)(3) (emphasis added). If a nutrient claim violates any provision of § 101.13, then it "may not be made on the label." *Id*. § 101.13(b) For that reason, "the general rule is that 'nutrient content claims' are not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). This is true even if the same claim is allowed inside the NFP. *Id*.; *see also Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018) (finding that a front label claim of "0 grams of trans fat per serving" was misleading even though the regulations required the defendant to make a same statement inside the NFP).

Defendant's Products mislead consumers about the amount of protein they will actually receive from consuming the Products. For example, Defendant prominently advertises "11g Protein" on the front of its Cinnamon Crisp cereal. In reality, the product provides only 7 grams of protein nutritionally, i.e., *almost 40% less than claimed*, because Defendant uses poor quality protein sources that humans cannot fully digest and that are deficient in certain amino acids essential to human protein synthesis. Defendant's labels are, therefore, false, misleading and misbranded in violation of federal and parallel state law. Plaintiffs are all California consumers who purchased Kashi products after reading and relying on the truthfulness of Defendant's protein claims on the front of the product packages. But on each of the Products Plaintiffs purchased, Defendant misrepresented the protein contents of the Products as containing more grams of protein than they actually contain, and far more than they actually provide to the human body. Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiffs would not have purchased them or, at a very minimum, Plaintiffs would have paid less for the Products.

Defendant raises a number of arguments about preemption, even though the issue is fully briefed and the Court has already taken it under submission. Should the Court want further argument on this topic, counsel is prepared to discuss it at the Case Management Conference, but Plaintiffs do not believe the Case Management Statement is an appropriate vehicle for relitigating the issue. Plaintiffs will point out briefly that Defendant's arguments (and the FDA emails) remain focused on the wrong issue. Neither Plaintiff's claim nor state law *require* Defendant to correct a quantitative protein statement on the front label based on PDCAAS, that was simply a proposed remedy. Plaintiffs' claims require only that any front label statement about the amount of a nutrient not be misleading in any respect, i.e., the same requirement as federal law, *see* 21 C.F.R. § 101.13(i)(3).

Defendant's Statement:

As the FDA has now stated twice, both in response to an inquiry from Kashi and an inquiry from KIND LLC, the FDA's food labeling regulations do not require manufacturers to account for protein quality or digestibility when making purely quantitative protein claims (like "11g Protein"). Despite Plaintiffs' insistence to the contrary, the labeling of Kashi's cereals scrupulously complies with the applicable FDA regulations, accurately states the amount of protein in each serving, and is not misleading.

Plaintiffs do not dispute that Kashi calculates the number of grams of protein in each product— which it states in both the Nutrition Facts panel and on the front of each package—using the FDA- approved nitrogen method. *See* 21 C.F.R. § 101.9(c)(7) ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food."). Nor do Plaintiffs dispute that Kashi complies with the FDA's requirement to state the percent of daily value of protein, which it calculates using the protein digestibility corrected amino acid score ("PDCAAS"), in the Nutrition Facts label. *See* 21 C.F.R. § 101.9(c)(7)(i)-(ii). Instead, Plaintiffs assert that Kashi's front-label protein claims—which state only the *quantity* of protein in each serving and do not otherwise characterize the protein in the product—are misleading because they do not account for protein quality and digestibility.

As explained at length in Kashi's motion to dismiss, Plaintiffs' theory is preempted by federal law. 21 C.F.R. § 101.9(c)(7) does not require manufacturers to account for protein digestibility when making front-label protein claims. The only requirement it imposes on manufacturers who make "protein claims" outside the Nutrition Facts panel—including both quantitative claims like "11g Protein" and qualitative

1  claims like "Good Source of Protein"—is to state the "corrected amount of protein" in the Nutrition Facts

2  panel, which must be calculated using the PDCAAS and expressed as a "percent of daily value." 21 C.F.R.

3  § 101.9(c)(7)(i).  In contrast, the regulation does *not* require manufacturers to correct the *number of grams*

4  of protein to account for protein quality or digestibility.  Indeed, Kashi asked the FDA whether it believed

5  that "a quantitative statement of protein [must] be based on the actual amount of protein as determined by

6  the nitrogen method" or whether it believed that "any quantitative statement of protein made outside the

7  NF [Nutrition Facts] must be based on the corrected amount of protein as determined by PDCAAS."  The

8  FDA responded that its "regulations do not require that the gram amount of protein declared in a

9  quantitative statement made outside the Nutrition Facts Panel be corrected for protein digestibility."

10  Unable to find support for their theory in 21 C.F.R. § 101.9(c)(7), Plaintiffs allege that Kashi's

11  front-label protein claims violate 21 C.F.R. § 101.13(i)(3) because they are "false and misleading."  But

12  far from prohibiting Kashi's front-label protein claims, 21 C.F.R. § 101.13(i)(3) expressly permits Kashi

13  to make front label claims about the "amount or percentage of a nutrient"—such as protein—so long as

14  the claim "does not in any way implicitly characterize the level of the nutrient and . . . is not false or

15  misleading in any respect (*e.g.*, '100 calories' or '5 grams of fat')."  21 C.F.R. § 101.13(i)(3).  Just like

16  "100 calories" or "5 grams of fat," Kashi's front-label protein claims—like "11g Protein"—accurately

17  reflect the amount of protein calculated using the FDA-approved nitrogen method and do not characterize

18  the protein in any way.  And while Plaintiffs allege that Kashi's front-label protein claims are nonetheless

19  "false and misleading" because they do not account for protein quality or digestibility, it is well-established

20  that "a statement cannot be 'false or misleading' . . . where challenged conduct is expressly required or

21  permitted by FDA regulations."  *Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *4 (N.D.

22  Cal. Aug. 10, 2016) (citations and internal quotation marks omitted); *see also Durnford v. MusclePharm

23  Corp.*, 907 F.3d 595, 602 (9th Cir. 2018) (affirming dismissal of similar claim challenging protein labeling

24  and emphasizing that the FDA's prohibition against "false or misleading statements *in general* does not

25  alter our analysis").  Because the FDA regulations do not require Kashi to account for protein quality or

26  digestibility when calculating the "actual amount of protein" in its products (21 C.F.R. § 101.9(c)(7)(ii)),

27  it cannot be "false or misleading" for Kashi to state the "actual amount of protein" on the front label.

28  **3.    Legal Issues:**

Plaintiffs allege seven (7) causes of action: (1) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) Common Law Fraud, Deceit and/or Misrepresentation; (4) California's Bus. and Prof. Code § 17200, *et seq.;* (5) Unjust enrichment; (6) Illinois Uniform Deceptive Trade Practices Act 815 Ill. Comp. Stat. 510/2, *et seq.*; and  (7) Illinois Consumer Fraud (Compl. ¶¶ 76-153).

**4.    Motions:**

Defendant filed a motion to dismiss on November 3, 2021.  Pursuant to the stipulation and order from this Court (ECF No. 15-16), Plaintiffs filed their opposition to the motion to dismiss on November 19, 2021, and Defendant filed its reply on December 2, 2021.  The Court heard argument on the motion on December 16, 2021.

Plaintiffs' Statement:

Plaintiffs anticipate filing a motion for class certification. Plaintiffs are hopeful that the parties will be able to resolve all their discovery disputes without the assistance of this Court, but disagreements about discovery are common in complex matters, and Plaintiffs may need to seek guidance on the scope or timing of that discovery. Plaintiffs reserve the right to file other motions as appropriate, including a motion for summary judgment (or partial summary judgment), and pretrial motions, including motions in limine.

Defendant's Statement:

Kashi has moved to dismiss Plaintiffs' complaint, and its motion to dismiss is currently under submission.  If the case proceeds beyond the pleading stage, Kashi intends to file a motion for summary judgment.  Consistent with this Court's standing order, Kashi believes it is most efficient and sensible for the parties to litigate motions for summary judgment prior to class certification briefing.

**5.    Amendment of Pleadings:**

Plaintiffs' Statement:

Depending on facts learned in discovery, Plaintiffs may seek to modify the proposed classes. Moreover, as this is a class action, additional plaintiffs may seek to intervene or be added. Additionally, although Plaintiffs expect to prevail on the pending motion to dismiss, they intend to request leave to amend their Complaint to address any deficiencies identified by the Court in making its ruling. Plaintiffs

propose a deadline for amending pleadings nine (9) months after the Court rules on the pending motion to dismiss or any subsequent motion to dismiss, whichever is later.

Defendant's Statement:

Kashi maintains that Plaintiffs' lawsuit is preempted by federal law and that any further amendment would be futile.  Nonetheless, to the extent the Court is inclined to permit Plaintiffs to amend their pleadings (either in response to its ruling on the pending motion to dismiss or otherwise), Kashi maintains that this deadline should precede the close of fact discovery.

**6.    Evidence Preservation:**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The parties will continue to discuss whether and to what extent any additional steps may be necessary to ensure the preservation of relevant evidence.  The parties have preserved potentially relevant evidence in their possession, custody, or control.

**7.    Disclosures:**

The parties will exchange their initial disclosures on or before December 29, 2021.

**8.    Discovery:**

Plaintiffs' Statement:

Plaintiffs provided Defendant with drafts of a proposed Protective Order and Order re the Discovery of Electronically Stored Information on November 9, 2021. To date, Defendant has not provided any edits or comments to Plaintiffs' drafts. While Plaintiffs expect Defendant to cooperate, in the event it fails to do so, Plaintiffs will move for entry of their proposals.

Plaintiffs served interrogatories, requests for admission, and requests for production on Defendant on December 17, 2021. Plaintiffs may also subpoena non-parties. Plaintiffs also anticipate deposing Defendant pursuant to Fed. R. Civ. Pro. 30(b)(6), as well as Defendant's employees with knowledge of facts relevant to Plaintiffs' claims. Plaintiffs also anticipate the parties will engage in expert discovery. Plaintiffs propose that fact discovery close eight months after the Court's decision on class certification, and expert discovery close ten months after the Court's class certification decision.

The Court should deny Defendant's informal request for a stay of discovery. First, pursuant to the Court's Standing Order, the parties must first meet and confer and then file a joint letter to obtain relief for discovery issues. None of that has occurred yet, and Defendant did not raise this issue during the parties' Rule 26(f) conference so granting the request is premature. Second, there is a strong likelihood that the Court will rule on the Motion to Dismiss before Defendant's deadline to respond to the pending discovery requests since the hearing has already occurred, and Defendant's responses to the discovery requests are not due until January 18, 2022. In such a circumstance, issuing a stay will be a fruitless exercise because Defendant will have to respond to the discovery requests nonetheless. Finally, given that Plaintiffs have already served written discovery, entering a stay could create confusion and further motion practice as to when Defendant must respond to those requests should the Court enter its order on the Motion to Dismiss after Defendant's current response deadline.

Defendant's Statement:

In light of its pending motion to dismiss, Kashi maintains that the Court should stay discovery until and unless it determines that Plaintiffs have stated a plausible claim. Courts in this District routinely stay discovery pending a motion to dismiss where: (1) the pending motion is potentially dispositive of the entire case; and (2) the court can decide the pending dispositive motion without additional discovery. *See, e.g.*, *Calvary Chapel San Jose v. Cody*, No. 20-3794, 2021 WL 5353883, at *1 (N.D. Cal. Nov. 12, 2021); *Malley v. San Jose Midtown Dev't, LLC*, No. 20-1925, 2020 WL 5877575, at *7 (N.D. Cal. Oct. 2, 2020); *Cellwitch, Inc. v. Tile, Inc.*, No. 19-1315, 2019 WL 5394848 (N.D. Cal. Oct. 22, 2019). There is no dispute that this case satisfies both standards.

Kashi's pending motion to dismiss is potentially dispositive of the entire case. This standard does not require Kashi to show that it is "immediately certain" or a "foregone conclusion" that its motion will be granted in its entirety; instead, "the dispositive motion need only have a clear possibility of success . . . ." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 287 (S.D. Cal. 2000); *see also Reveal Chat Holdco, LLC v. Facebook. Inc.*, No. 20-363, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020) ("[T]he question is only whether [a] motion to dismiss is *potentially* dispositive of the entire case.") (citation and internal quotation marks omitted). Here, if the Court concludes that the FDA regulations do not require Kashi to account for protein quality or digestibility when making front-label quantitative protein claims, then

Plaintiffs' entire lawsuit—which hinges on their allegation that Kashi's front-label protein claims are misleading because they do not account for protein quality or digestibility—is preempted.   Kashi respectfully submits that the Court should resolve the threshold question of whether Plaintiffs' claims are preempted before requiring Kashi to begin responding to discovery.

Moreover, Kashi's motion to dismiss does not require any additional discovery to resolve; instead, it challenges the *legal* sufficiency of Plaintiffs' claims, even assuming the truth of their factual allegations. *See, e.g.*, *Reveal Chat Holdco*, 2020 WL 2843369, at *3 (granting motion to stay discovery pending motion to dismiss where the "motion to dismiss is based solely on the allegations in the Complaint and does not raise any factual issues").   That is particularly true here, as preemption is a legal question whose resolution does not depend on discovery.   *See generally ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 761-62 (9th Cir. 2014) ("Preemption is almost always a legal question, the resolution of which is rarely aided by development of a more complete factual record.")

A discovery stay is not only consistent with the two-part test outlined by courts in this District, but would also avoid the unnecessary burden and expense of discovery in a case that will likely not survive the pleading stage.   Courts have recognized that the "avoidance of undue burden or expense is grounds for the issuance of a protective order" and that "a stay of discovery pending resolution of potentially dispositive issues furthers the goal of efficiency for the courts and the litigants."   *Myers v. Pulido*, No. 16-638, 2017 WL 1351349, at *1 (E.D. Cal. Apr. 11, 2017) (citing *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").   And because of the "asymmetrical nature of discovery in class actions," the burden of producing documents and responding to discovery will fall disproportionately on Kashi.   *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020).   In contrast, there is no conceivable prejudice Plaintiff will suffer from a discovery stay: the Court has already heard argument on Kashi's motion to dismiss, and Kashi will engage in discovery if the Court denies that motion.   The equities weigh strongly in favor of temporarily staying discovery.

In the event that this case proceeds past the pleading stage, Kashi intends to propound requests for production and interrogatories on Plaintiffs and will take their depositions.  Kashi will also engage in expert discovery targeted at the merits' of Plaintiffs' claims and their proposed damages model.

**9.    Class Action Matters:**

Plaintiffs' Statement:

Plaintiffs make the following disclosures as required by N.D. Cal. Civil L.R. 16-9(b).

Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

- The Class:  All persons in the United States who purchased the Products between September 10, 2017 and the present.

- The California Subclass:  All persons in the State of California who purchased the Products between September 10, 2017 and the present.

- The Illinois Subclass:  All persons in the State of Illinois who purchased the Products between September 10, 2017 and the present.

Plaintiffs contend that this action involves common questions of law and fact to the potential classes because each class member's claim derives from the unfair and unlawful statements and omissions that led them to believe that the Products have the amount of protein claimed on the front of the package when, in truth, the Products provide considerably less protein and are misbranded. The classes are also sufficiently numerous as evidenced by, *inter alia*, Plaintiffs' Complaint. Plaintiffs are typical of the classes and their chosen counsel will adequately represent the proposed classes. Finally, common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the classes to recover. Among the questions of law and fact common to the classes are:

a)    The true nature of the protein content in the Products;

b)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful because of misrepresentations and omissions;

c)    Whether Defendant's actions violate Federal and California laws invoked herein;

d)      Whether labeling the Products as containing more grams of protein than they actually provide causes the Products to command a price premium in the market as compared with similar products that do not make such misrepresentations;

e)      Whether Defendant's advertising and marketing regarding the Products sold to the class members were likely to deceive reasonable consumers;

f)      Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

g)      Whether Defendant engaged in the alleged misconduct knowingly, recklessly, or negligently;

h)      The amount of profits and revenues earned by Defendant as a result of the conduct;

i)      Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j)      Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

Plaintiffs contend that the classes can be certified consistent with the requirements of Fed. R. Civ. P. 23(b)(2) or (b)(3).

Plaintiffs' Proposed Certification Schedule:

| | |
|---|---|
| Deadline for Plaintiffs to file their motion for class certification and any expert report(s) in support thereof | Eight (8) months after Defendant files its answer to the operative Complaint |
| Deadline for Defendant to file its opposition to class certification and produce any expert report(s) in support of its thereof | Eight (8) weeks after Plaintiffs file their motion for class certification |
| Deadline for Plaintiffs' to file their reply in support of motion for class certification | Six (6) weeks after Defendant files its opposition to the motion for class certification |

During the parties' Rule 26(f) conference, Defendant did not mention its desire to move for summary judgment and has not indicated what issue(s) it believes are proper for resolution before class certification. In the event Defendant moves for summary judgment before class certification, it is Plaintiffs' position that the parties should be limited to a single motion for summary judgment per side. *See e.g.*,

*Landau v. Lamas*, 2019 U.S. Dist. LEXIS 128822, *2 (M.D. Pa. August 1, 2019) (finding that allowing multiple summary judgment motions "to be submitted piecemeal . . . has presented an extraordinarily cumbersome, confusing, and laboriously segmented approach to this case that has resulted in an unnecessary and wasteful use of judicial resources").

       <u>Defendant's Statement</u>:

       Kashi does not believe that this lawsuit is appropriate for class-wide resolution—and certainly not on a nationwide basis.  Furthermore, as explained above, Kashi maintains that it is more economical and efficient for the parties to litigate summary judgment before class certification.  Kashi accordingly proposes that Plaintiffs' deadline to file a motion for class certification should be approximately three months after the Court rules on Kashi's summary judgment motion (or the parties' cross-motions for summary judgment), that Kashi's deadline to oppose Plaintiffs' class certification motion should be eight weeks thereafter, and that Plaintiffs' deadline to file their reply brief should be six weeks thereafter.

**10.    Related Cases:**

       On October 18, 2021, Judge Chhabria deemed the following case as "related" for purposes of Local Rule 3-12: *Brown v. Kellogg Company*, No. 21-cv-07388 (N.D. Cal.).

**11.    Relief:**

       <u>Plaintiffs' Statement</u>:

       As set forth in the Complaint, Plaintiffs are seeking certification of the proposed classes, restitution, compensatory damages including statutory damages where available, punitive damages, treble damages, disgorgement of Defendant's wrongfully obtained profits, injunctive relief, costs, attorneys' fees, interest, and any other relief that the Court may deem just and proper.

       <u>Defendant's Statement</u>:

       Kashi denies that this case is amenable to class-wide treatment and denies that Plaintiffs or any member of the putative classes they purport to represent are entitled to any relief whatsoever.

**12.    Settlement and ADR:**

       The parties each filed ADR Certifications pursuant to Civil L.R. 16-8(b) and ADR L.R. 3-5(b) on December 15, 2021. The parties have discussed with their clients and each other whether this case might benefit from ADR dispute resolution options. The parties attended a private mediation prior to the

commencement of this litigation and will stipulate to attend another private mediation at an appropriate point in the case.

**13.     Assignment to Judge Vince Chhabria for All Purposes:**

The case was assigned to Judge Vince Chhabria for all purposes on September 16, 2021.

**14.     Other References:**

At this time, the parties do not believe that these cases are suitable for MDL treatment, or reference to binding arbitration or a special master.

**15.     Narrowing of Issues:**

The parties do not believe that there is a need to narrow issues at this time.

**16.     Expedited Trial Procedure:**

The parties do not believe this case is suitable for treatment on an expedited basis.

**17.     Scheduling:**

Plaintiffs' Statement:

Plaintiffs have proposed a schedule for briefing on the anticipated motion for class certification in Section 9 above. Plaintiffs also propose that fact discovery close eight months after the Court's decision on class certification, and expert discovery close ten months after the Court's order class certification decision. Defendant's proposed schedule is problematic since it does not provide for fact discovery after the Court enters its order on class certification.

Defendant's Statement:

In light of its view that it is more economical and efficient for the parties to litigate summary judgment prior to class certification, Kashi proposes the following schedule:

| Event | Deadline |
|---|---|
| Close of fact discovery | Ten months after Kashi's answer |
| Deadline to file motion for summary judgment | Three months after close of fact discovery |
| Deadline to file motion for class certification | Four months after ruling on motion for summary judgment |
| Close of expert discovery | Four months after ruling on motion for class certification |

**18.     Trial:**

Plaintiffs have demanded a jury trial. The parties believe it is premature to estimate the length of the trial at this time.

19.  **Disclosure of Non-Party Interested Entities or Persons:**

Pursuant to Civil Local Rule 3-16, the parties filed their respective Certificates of Interested Entities. *See* ECF Nos. 9 and 24.

20.  **Professional Conduct:**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.  **Other Matters:**

None at this time.


Dated:  December 29, 2021.


*/s/ Kali R. Backer*
**GUTRIDE SAFIER LLP**
Seth Safier
Marie A. McCrary
Hayley Reynolds
100 Pine Street, Suite 1250
San Francisco, CA 94111

Kali R. Backer (*pro hac vice*)
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303

Attorneys for Plaintiffs

*/s/ Alexander M. Smith*
**JENNER & BLOCK LLP**
Dean N. Panos (pro hac vice)
353 North Clark Street
Chicago, IL 60654

**JENNER & BLOCK LLP**
Alexander M. Smith (Bar No. 295187)
515 South Flower Street, Suite 330
Los Angeles, CA 90071

Attorneys for Defendant